Filed 4/2/25  In re L.M. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re L.M., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E084968 |
| Plaintiff and Respondent, | (Super.Ct.No. J284146) |
| v. | OPINION |
| L. Z., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Conditionally reversed with directions.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Landon Villavaso, Deputy County Counsel, for Plaintiff and Respondent.

1

## I. INTRODUCTION

Lisa Z. (Mother) appeals from an order terminating her parental rights with respect to L.M. pursuant to Welfare and Institutions Code[1] section 366.26. The sole claim raised in Mother's appeal is that the San Bernardino County Children and Family Services (CFS) failed to fulfill its duty of inquiry under the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) as implemented by section 224.2, subdivision (b), because it failed to interview three extended relatives regarding L.M.'s potential status as an Indian child. While we disagree with Mother's assertion that the failure to interview every extended family member identified in the record renders an ICWA inquiry inadequate, we conclude that the record in this case does not contain substantial evidence to support the juvenile court's implied finding that CFS fulfilled its duty under section 224.2 and conditionally reverse the order terminating Mother's parental rights.

## II. BACKGROUND

Mother is the biological mother of L.M. In February 2020, CFS filed a petition on behalf of L.M. pursuant to section 300 alleging, in part,[2] Mother's failure or inability to adequately supervise, protect or provide regular care as the result of unresolved domestic violence, substance abuse and mental health issues in the home. The petition also alleged the abuse of L.M.'s siblings and half-siblings, disclosing that Mother had previously lost

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] The petition also included allegations against L.M.'s father, who is not a party to this appeal.

custody of at least seven children, had failed to reunify with five of them, and was presently receiving reunification services with respect to two of them.

According to the detention report, CFS recommended a finding that ICWA did not apply because Mother and L.M.'s father had both denied native American ancestry when asked by a social worker. CFS also requested that L.M.'s parents complete parental "Family Find and ICWA Inquiry" forms as well as a judicial council form ICWA-020. Both parents reported that it was "unknown" whether they had Native American ancestry and that "I have no Indian ancestry as far as I know." CFS also obtained completed "Family Find and ICWA Inquiry" forms from two cousins and maternal grandmother. Both cousins reported that it was "unknown" whether L.M. had Native American ancestry. Maternal grandmother reported that L.M. did have Native American ancestry, but did not provide any further information regarding the nature of this ancestry.

On March 11, 2020, the juvenile court held a jurisdictional and dispositional hearing. In advance of the hearing, CFS submitted a jurisdictional and dispositional report. With respect to its ICWA inquiry, CFS stated only that: "The Indian Child Welfare Act does not apply," without describing any investigative efforts undertaken by social workers or explaining how CFS reached this conclusion. At the conclusion of the hearing, the juvenile court sustained the jurisdictional allegations against parents, formally removed L.M. from her parents' custody and made a finding that L.M. "does not come under the provisions of the Indian Child Welfare Act."

CFS filed status reports in September 2020, February 2021, and October 2021. In each of its reports, CFS included the statement that "The Indian Child Welfare Act does

3

not apply."  However, CFS did not describe any efforts to investigate L.M.'s potential native American ancestry other than re-asking the parents to confirm or deny native American ancestry on one occasion.[3]

L.M. was returned to her parents' custody under a plan of family maintenance for a period of time in 2022 and 2023.  However, on August 4, 2023, CFS filed a supplemental petition on behalf of L.M. pursuant to section 387 with new allegations against parents.  In an accompanying detention report, CFS stated that "The Indian Child Welfare Act does not apply."  But the report did not detail any new investigative efforts other than asking parents to again answer whether they had knowledge of Native American ancestry.

On August 7, 2023, the juvenile court held a detention hearing.  At the hearing, the juvenile court directly inquired of L.M.'s parents whether they had any Native American ancestry.  L.M.'s father responded, "Not that I know of."  However, Mother stated: "I do . . . . [¶] I just don't know how to get into my reservation and all of that."  When the juvenile court asked Mother which tribe she might be affiliated with, Mother responded: "I'm not sure.  My family knows.  I have family that are registered as Indians."  The juvenile court also inquired directly of maternal grandmother at the detention hearing.  The following colloquy ensued:

The Court:  "Do you have Native American ancestry?"

_____

[3] In one of the reports, CFS merely referred to the previous representations made by parents and maternal grandmother prior to the jurisdictional and dispositional hearing. In another report, CFS merely referred to the finding made by the juvenile court at the jurisdictional and dispositional hearing that ICWA did not apply.

Maternal grandmother: "No, not myself."

The Court: "Do you think… the child does?"

Maternal grandmother: "Her 3 oldest children receive a check from, I believe, Texas."

The Court: "From the tribe – from a tribe in Texas?"

Maternal grandmother: "It's an Indi – it's like San Diego, which is where the oldest son was taken when he was murdered. They helped with that."

The Court: "You don't know the name or anything?"

Maternal grandmother: "No. I tried to wrack my brain, but we brought the medical reports."

The Court: "Maybe there could be a worker to meet with the family when we're done, or they can go somewhere for ICWA. Apparently, they have stuff that might be helpful. I don't know. Just – maybe its just – maybe you can have somebody photocopy that. I don't know. Whatever you all think you need to do."

Both parents submitted on the issue of detention, the juvenile court ordered L.M. detained, and a combined jurisdictional and dispositional hearing was set.

CFS filed a jurisdictional and dispositional report on August 24, 2023; a status report in April 2024; a section 366.26 report in July 2024; and an additional information report in October 2024. However, with respect to CFS's ICWA inquiry, the only new inquiry efforts disclosed in these reports related to re-asking parents and paternal family members whether they had knowledge of potential Native American ancestry.[4]

---

[4] The August 2023 jurisdictional and dispositional report detailed that a social worker had asked a paternal great grandmother and a paternal cousin whether they had knowledge of Native American ancestry. The October 2023 additional information report detailed a successful attempt to contact a paternal aunt, who denied knowledge of any Native American ancestry, as well as an unsuccessful attempt to obtain contact

*[footnote continued on next page]*

On November 7, 2024, the juvenile court held a hearing pursuant to section 366.26. At the conclusion of the hearing, the juvenile court again made a finding that ICWA did not apply and terminated Mother's parental rights as to L.M. Mother appeals from the order terminating her parental rights.

## III. DISCUSSION

In this appeal, the only claim of error is that the juvenile erred by finding that ICWA did not apply because CFS failed to fulfill its duty of inquiry under the ICWA and section 224.2. For the reasons set forth below, we agree and conditionally reverse the order terminating Mother's parental rights to permit CFS and the juvenile court to correct this error.

A. *General Legal Principles and Standard of Review*

"Congress enacted ICWA in 1978 to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement, usually in non-Indian homes. [Citation.] ICWA established minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.)

Section 224.2 of the Welfare and Institutions Code "creates three distinct duties regarding ICWA in dependency proceedings. First, from the [Department's] initial

---

information for additional paternal relatives. Curiously, CFS represented in its additional information report that it was unable to obtain the contact information for paternal great grandmother, despite the fact that it had already represented to the court that an ICWA inquiry had been conducted of the paternal great grandmother in its earlier jurisdictional and dispositional report.

6

contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. [Citation.] Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the [Department] 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' [Citation.] Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1052; § 224.2)

Following the inquiry stages, the juvenile court may make a finding that ICWA does not apply because the department's inquiry and due diligence was " 'proper and adequate' but no 'reason to know' whether the child is an Indian child was discovered." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1050.) "The finding implies that notice to a tribe was not required because social workers and the court did not know or have a reason to know the [dependent] children were Indian children and that social workers had fulfilled their duty of inquiry." (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885, overruled in part by *In re Dezi C.* (2024) 16 Cal.5th 1112.) " ' "On a well-developed record, the [juvenile] court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case." ' " (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1141.)

"[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order." (*In re A.M.* (2020) 47 Cal.App.5th 303, 314, disapproved on

7

other grounds in *In re Dezi C., supra,* 16 Cal.5th at p. 1152, fn. 18; *In re Austin J.*, *supra*, 47 Cal.App.5th at p.885 [implicit finding that social workers fulfilled their duty of inquiry and is reviewed for substantial evidence].)

B. *Application*

As an initial matter, we are unpersuaded by Mother's argument that CFS purported failure to inquire of three family members[5] regarding whether L.M. may be an Indian child precludes the juvenile court from finding that ICWA does not apply. As our Supreme Court has explained: "[i]f, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law . . . , there is no error and conditional reversal would not be warranted even if the agency did not inquiry of everyone who has an interest in the child." (*In re Dezi C., supra,* 16 Cal.5th at p. at 1141.) Thus, the mere fact that an extended family member has been identified in a report, but not interviewed regarding ICWA does not, in itself establish error warranting reversal.

Nevertheless, upon review of the record in this case, we conclude that the juvenile court's implied finding that CFS fulfilled its inquiry duties under section 224.2 is not supported by substantial evidence. While any ICWA investigation need not be exhaustive, the juvenile court's finding that social workers fulfilled their duty of inquiry

---

**5** We acknowledge that the parties disagree as to the nature of the relationship these family members had with L.M. but conclude that resolution of this factual dispute is unnecessary to our disposition in this case.

8

under section 224.2 generally turns on (1) whether social workers conducted an inquiry of extended family members whom they were already investigating as part of their usual course of work (*In re S.S.* (2023) 90 Cal.App.5th 694, 704-705; *In re H.B.* (2023) 92 Cal.App.5th 711, 720); and (2) whether the record was sufficient to support a reasonable conclusion that the inquiry " 'has reliably answered the question at the heart of the ICWA inquiry:  Whether a child involved in a proceeding "is or may be an Indian child" ' " (*In re H.B.*, at p. 720).  In our view, the ICWA inquiry efforts documented by CFS in this case were not sufficient to meet the second prong of this test.

Here, the record shows that at the August 2023 detention hearing, Mother specifically claimed she had Native American ancestry, but did not have access to the records needed to identify a specific tribal affiliation.  At the same hearing, maternal grandmother reported that at least three of Mother's children had received some form of financial disbursement from a tribal entity, and she suggested that more identifying information could be found in medical records in her possession related to the death of one of those children.  While the information provided by maternal grandmother is ambiguous, Mother's express claim of Native American ancestry, combined with a report that at least some of Mother's children may have received a direct financial disbursement from a tribal entity is clearly sufficient to at least give reason to believe L.M. may be an Indian child such that CFS had a duty to make further inquiries.  (§ 224.2, subd. (e).)  Indeed, the juvenile court recognized this at the time of the hearing when it expressly suggested that CFS review the documents identified by maternal grandmother and conduct a further investigation into the claim.

9

Yet the record contains no suggestion that CFS ever made any attempts to determine the accuracy of maternal grandmother's representations at the detention hearing. There is no indication that social workers ever reviewed the documents maternal grandmother purported to make available at the time of the detention hearing; no indication that CFS conducted any additional interviews with maternal grandmother or other maternal relatives; and no indication that CFS took any efforts to contact any of Mother's other children to verify whether they were receiving or had ever received financial disbursements from a tribal entity.[6]

It is true that " ' "[o]n a well-developed record, the [juvenile] court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes." ' " (*In re Dezi C.*, *supra*, 16 Cal.5th at p. at 1141.) Where the relevant child welfare agency has been provided specific information that suggests that a child may be an Indian child, the failure to document any steps to investigate the veracity of that information necessarily limits the juvenile court's discretion to find that a proper inquiry has been conducted.

---

[6] Nor is this a case where CFS could reasonably claim that no contact information was available for these individuals. While some of Mother's children were clearly adults by the time of the present dependency case involving L.M., the record suggests that all of them were at some point in time dependents of the juvenile court. Thus, at the very least CFS presumably had information that could have been used to attempt to contact these individuals, even if such attempts may show that their contact information has subsequently changed.

10

In our view, the record in this case does not support a reasonable conclusion that the inquiry conducted by CFS has reliably answered the question of whether L.M. is or may be an Indian child.  As a result, any implied finding by the juvenile court that the inquiry was adequate under section 224.2 is not supported by substantial evidence.  And when an ICWA inquiry is inadequate, "conditional reversal is warranted in order to develop the record and cure the inadequacy." (*In re Dezi C.*, *supra*, 16 Cal.5th at p. 1145.)

## IV.  DISPOSITION

The order terminating Mother's parental rights is conditionally reversed and remanded to the juvenile court for compliance with the inquiry and notice requirements of sections 224.2 and 224.3 and the documentation provisions of Rules of Court, rule 5.481(a)(5).  If the juvenile court thereafter finds a proper and adequate further inquiry and due diligence has been conducted and concludes ICWA does not apply, then the juvenile court shall reinstate the order terminating parental rights.  If instead the juvenile court concludes ICWA applies, then it shall proceed in conformity with ICWA and California implementing provisions.  (See 25 U.S.C. §1 912, subd. (a); §§ 224.2, subd. (i)(1), 224.3 and 224.4.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:

McKINSTER
Acting P. J.

RAPHAEL
J.